MANUEL MARTORELL, Plaintiff and Appellant, *v.* CRÉDITO Y AHORRO PONCEÑO, Defendant and Appellee.

No. 5094.   Argued June 17, 1930.—Decided July 21, 1931.

*R. Rivera Zayas* and *F. Rodríguez Alverio* for appellant.   *Miguel Marcos Morales* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

By a deed executed on September 22, 1921, Manuel Martorell and his wife, Pilar Torres Vázquez, constituted in favor of the Crédito y Ahorro Ponceño, a bank organized in Puerto Rico, a first mortgage amounting to $2,000 as principal, $200 as interest thereon at the rate of 10 per cent per annum, and $500 for costs and attorney's fees where applicable, the mortgage to mature on March 30, 1922, and the property mortgaged being described in the deed as follows:

"URBAN: A one-story concrete house, with galvanized-iron roof, measuring 9.10 meters in front by 8.80 meters deep, with a wing built of reinforced concrete, 5.81 meters long by 3.73 meters wide, on a lot which measures 16 meters in front by 69 deep, with an area of 1104 square meters. It is bounded on the south by land of Manuela Espina Rivera de Solares; on the north by a house owned by Manuel Pontón Santiago and land belonging to Ethervina Santiago; on the east by the La Plata River; on the west by Eduardo Georgetti Street, in the town of Comerío, where it is situated."

The mortgage became due, and on January 8, 1926, the Crédito y Ahorro Ponceño instituted a mortgage foreclosure proceeding against said Martorell based on the above mentioned credit. That proceeding followed its course and terminated with the sale and award at public auction of a piece of property belonging to Martorell, to which we shall advert further on in this opinion.

In his complaint in the present case Manuel Martorell alleged the prosecution of said foreclosure proceeding; that on July 6, 1922, Martorell, through Belisario Boscana, who was the authorized agent of the defendant, Crédito y Ahorro Ponceño, paid on account of said mortgage credit $1,000 and an extension was granted to him for the remaining $1,000 to March 30, 1923, upon the payment of interest; that on June 8, 1923, through the same agent, Martorell paid to the Crédito y Ahorro Ponceño on account of principal and interest $603.85, leaving still pending $500, capitalized interest up to December 8, 1923, to which date the obligation was

extended; that on July 30, 1924, and through the same agent Boscana, the plaintiff paid to the Crédito y Ahorro Ponceño on account of the principal the sum of $300, the indebtedness being thus reduced to $200 and interest thereon; that the Crédito y Ahorro Ponceño, in instituting the mortgage foreclosure proceeding, knowingly and maliciously falsified, in the fourth paragraph of the initial petition in said proceeding, the liquid amount of the claim, omitting to state specifically the exact amounts collected as interest or on account of the principal of the obligation; that the mortgage deed contained an erroneous description of the property the object of the contract, which was described as being of reinforced concrete whereas its true description is as follows:

"URBAN: A one-story frame house used as a dwelling, built on foundations partly of concrete, with galvanized-iron roof, and measuring 9.70 meters in front by 8.80 meters deep, with a wing annexed thereto built of the same materials and having a width of 5.73 meters and used as a kitchen and for other purposes";

which description is the one set forth in the deed of sale of such property to Manuel Martorell dated June 20, 1921; that towards the end of 1923 and the beginning of 1924 Martorell built with funds belonging to the conjugal partnership, on a portion of the lot described in the mortgage deed, a new house described thus:

"URBAN: A one-story building with a mirador, all built of reinforced concrete and with galvanized-iron roof, located in the town of Comerío, and having the following measurements: the ground floor is 35.20 meters deep by 13.80 meters wide, and the mirador is 15 meters deep by 13.80 meters wide. It is built on land belonging to Manuel Martorell bounded on the west, or front, by Eduardo Georgetti Street; on the south, or right side, by land belonging to Manuela María Asunción Espina de Solares; on the north, or left side, by a house and lot of Manuel Pontón Santiago and by land of Ethervina Santiago Rivera; on the east, or rear, by the La Plata River."

It was further alleged that this house is valued at $14,000 and rented for $150 a month; that it was included in the

public auction held in connection with said foreclosure proceeding, and was sold and awarded to Juan B. Carmona; that in consequence of said mortgage foreclosure proceeding, the plaintiff has suffered damages, which he estimates at $28,000 including the value of the buildings, lot, and rents, and his mental suffering.

In its answer to the complaint the Crédito y Ahorro Ponceño admitted the prosecution of the foreclosure proceeding, but denied that the description of the property was erroneous. It further denied that the new building had been built with funds belonging to the conjugal partnership or with any other funds, at the cost alleged in the complaint; or that said new building, if it existed at all, had been sold at a public auction and delivered to Carmona; or that Martorell, through Belisario Boscana, had paid on account $1,000 or any other sum; or that Boscana was an agent, authorized or otherwise, of the Crédito y Ahorro Ponceño; or that any extension had been granted or payments made as alleged in the complaint; or that the Crédito y Ahorro Ponceño, knowingly and maliciously or otherwise, had made any false statement in the initial petition in the mortgage foreclosure proceeding as to the liquidated amount of the obligation, or in regard to any other fact whatsoever; or that any damages had been caused. It set up estoppel by conduct based on the knowledge by Martorell of the mortgage deed which was read out to him without his correcting the description; estoppel by negligence and false representation; estoppel by silence, and the estoppel of a debtor who can not question the identity of mortgaged property.

The case went to trial and the evidence was heard. The court rendered a judgment holding that the law and the facts were in favor of the defendant and dismissed the complaint, with costs against the plaintiff. The latter has appealed from such judgment, and assigns for our consideration several errors which we shall examine as far as may be requisite.

The first assignment is as follows:

"1.—The lower court committed manifest error in finding that the sum claimed by defendant Crédito y Ahorro Ponceño in the fourth paragraph of the initial petition, in the foreclosure proceeding, specifically stated the exact amounts collected as interest or on account of the principal of the debt; also in holding that said sum was the net amount to which the mortgage creditor was entitled; and in admitting evidence regarding stipulations for payment not covered by the recitals of the mortgage contract.

Undoubtedly, this is one of the most important assignments of error presented in the instant case.

The second clause of the deed of September 22, 1921, whereby the mortgage was constituted reads as follows:

"To secure the full payment of the said sum of $2,000 as principal, $200 as interest, and $500 for costs and attorney's fees, which he also promises to pay in case judicial action is taken for the recovery of the debt, the party of the first part, Manuel Martorell Sabino, with the express consent of his wife, Pilar Torres Vázquez, who is also a party hereto, hereby constitutes a voluntary first mortgage in favor of the said creditor, 'Crédito y Ahorro Ponceño, Incorporada,' upon the consolidated property described in the third paragraph of the within deed, which property secures the sums above specified and shall continue thus encumbered until the obligation herein is fully extinguished."

We have carefully examined the initial petition in the mortgage foreclosure proceeding involved in the case at bar. We insist that the proper designation and description of that pleading is "initial petition," because it is so termed in the statute, where the use of the word "complaint" seems to have been purposely avoided. In the said petition there appears the following paragraph, numbered 4:

"That after this mortgage credit became due on March 30, 1922, the defendant made partial payments which have reduced the same to $902.15, the interest having been capitalized to July 30, 1925, and up to this time the said defendant has not paid either wholly or partially this balance of $902.15, nor the interest thereon at the agreed rate of ten per cent per annum which has accrued from July 30, 1925, until the present time."

The special proceeding involved here is a summary one wherein a great many requirements of the old foreclosure procedure have been abolished in the interest of certain guarantees, which we might term extraordinary, existing for the benefit of the creditor, but without eliminating other guarantees which the mortgage debtor had always enjoyed since the establishment of mortgages, although the majority of the means of defense that in an ordinary proceeding could be used, more or less successfully, more or less validly, by such debtor were suppressed. But the very extraordinary character of this proceeding and the absence of said means of defense demand from the creditor a rigorous and strict compliance with the statutory provisions, without omitting any of the requirements that the law prescribes not only in order that the proceeding will exhibit all the necessary marks of legality but also that the judge called upon to pass upon the petition and documents attached thereto will feel justified in issuing the writ demanding payment of the debtor in the drastic and speedy form provided under such proceeding.

Article 169 of the Mortgage Law Regulations reads as follows:

"The following shall be presented with the initial petition in the proceedings:

"*      *      *      *      *      *      *

"The petition referred to in this article, which shall always be authorized by the signature of an attorney at law, shall enumerate the facts and the legal reasons supporting the correctness, the subsistence and the demandability of the claim and the jurisdiction of the court; it shall specifically state the exact amounts collected by way of interest or on account of the principal of the debt, stating also the net amount of the claim which, by the mere act of instituting the proceedings the creditor will contract, assuming liability for any loss or damage the debtor or interested third persons may suffer through malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them."

It is possible that some doubt might arise as to whether the failure to comply with any of these requisites, especially the one relating to the statement of the exact amounts collected by way of interest or on account of the principal of the debt, might of itself bring about the nullity of the mortgage foreclosure proceeding. But if such requisites are necessary in order that the judge may issue the writ demanding payment and any of them is omitted, there is no doubt that where, notwithstanding such omission, the writ is issued it can have no legal effect or validity. The proceeding is a strict one and compliance with the conditions or requirements prescribed for the initial petition is indispensable, to such an extent that an initial petition from which any one of such requisites is omitted can not and should not be considered by the judge as a basis for issuing the writ demanding payment.

In might be questioned whether noncompliance with any of those conditions or requirements would merely cause a liability in damages. But such liability could only have as a basis the absence from the petition of circumstances or facts that are indispensable to enable the judge to authorize the proceeding and to act therein. Where the law requires a special and definite procedure for seeking relief before a court, any departure from such procedure may and should, in our judgment, produce the nullity of all the proceedings taken on that defective basis.

In the instant case the exact amounts collected by way of interest or on account of the principal of the debt were not specifically stated, as required by law. To justify the issuance of a formal demand for payment, such specific and exact statement becomes indispensable; it is lacking here, and the writ demanding payment based on said initial petition is void.

Some argument has been made in the present case as to the inclusion in the mortgage debt of the amounts paid by the Crédito y Ahorro Ponceño for account of Martorell, for

purposes of insurance. Indeed, this was not explicitly alleged in the complaint.. But such amounts appear from the evidence introduced by the defendant (pages 99 and 105, Tr. ·of Ev., Exhibits 5 and 13). The following amounts appear included in those entries:

"   .     .     .     .     .     .     .     .     .     .

| | | |
|---|---|---|
| "X–273 | Expenses of trip to Comerío, to press collection _____ | $3. 50 |
| "M–133 | Paid on Feb. 5/23 for insurance premiums___ | 57. 66 |
| "K–169 | Interest from January to June 1924, six months, on $500, and on $57.66 of the policy · | 27. 80 |
| "K–464 | Id., id., from June to December, 1924_____ | 27. 80 |
| "X–241 | Paid on Feb. 6, 1924, for renewal of policy | 57. 66 |
| "E–63 | Paid on Feb. 19, 1925, for renewal of policy | 72. 08." |

The above refers to payments made prior to the foreclosure of the mortgage credit.

This evidence having been introduced, although no mention was made in the complaint of the inclusion oft the above items in the debt due, we can not conceive how we could refuse to see what so vividly appears before us. Any sums that Martorell might be owing to the Crédito y Ahorro Ponceño by reason of the payment of premiums on insurance policies could never have properly been included in the mortgage debt for the purpose of the foreclosure sought, as they were not secured by the mortgage. See the decision in *Santos* v. *Crédito y Ahorro Ponceño,* 41 P.R.R. 934, 937, where this Court said:

"In the instant case the language of the clause whereby the mortgage was created is too plain to admit of construction. The fact that the mortgagor in subsequent paragraphs of the same instrument assumed certain personal obligations cannot operate an extension of the mortgage so as to secure the performance of such obligations, in the absence of any evidence of such an intention. Neither the interest on the indebtedness to the bank nor the money paid by it to the notary and to the registrar of property was included in the mortgage. The foreclosure proceeding was a nullity. This result is not affected by the fact (also pointed out by the trial judge) that in

prorating the proceeds of the sale between the bank and Benigno Díaz, the bank, (after acquisition of the mortgaged property) waived its claim to interest and re-imbursement of the money expended in notary and registry fees.''

Since we find that the mortgage foreclosure proceeding was void, it is unnecessary to pass upon the other assignments of error, save the eighth which is based on the failure of the court to consider the allegations of the complaint and the evidence in regard to damages.

In his argument under this assignment the appellant says:

"The court did not go into a consideration of this point, by reason of the conclusion it had reached with reference to the cause of action. We maintain that as the court erred in the essential questions involved in this litigation, it likewise erred in failing to consider and to pass upon the evidence introduced regarding damages.''

Indeed, in its statement of the case and opinion the court regarded it as unnecessary to consider the question relating to the damages claimed because it believed that the mortgage foreclosure proceeding was valid. As it was not valid, a determination of that question becomes necessary.

The judgment appealed from must be reversed as regards the validity of the mortgage foreclosure proceeding; but as regards the claim for damages, the case must be remanded to the lower court for further proceedings not inconsistent with this opinion.